UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| GREGORY SWECKER, et al., | |
|---|---|
| Plaintiffs, | |
| v. | Case No. 16-1434 (CRC) |
| MIDLAND POWER COOPERATIVE, et al., | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiffs Gregory and Beverly Swecker own and operate a wind turbine on their Iowa farm. They have brought this *pro se* action against two Iowa electric utilities and the Federal Energy Regulatory Commission ("FERC") under the Public Utility Regulatory Policies Act of 1978 ("PURPA"). Under PURPA, FERC must promulgate rules requiring electric utilities to purchase electricity from small generation facilities like Plaintiffs' wind turbine. The statute limits the price that these utilities must pay for the electricity, such that it cannot exceed the utility's "avoided cost"—the price at which the electricity could have been acquired from an alternative source. The Sweckers allege that the Defendant utilities have violated several FERC regulations related to the calculation of avoided cost, and that FERC has failed to enforce these regulations against the utilities. Defendants have moved to dismiss the Complaint. Because the Court lacks personal jurisdiction over the Iowa-based utilities and subject matter jurisdiction over the Sweckers' claims against FERC, it must dismiss this case in its entirety.

I.  **Background**

A. PURPA

Congress enacted PURPA in 1978 in response to a nationwide energy crisis. FERC v. Mississippi, 456 U.S. 742, 745 (1982). Congress sought to, among other things, encourage the development of renewable energy sources. See 16 U.S.C. § 824a–3(a). In furtherance of this objective, PURPA directs FERC to promulgate rules that require electric utilities to purchase electricity from "qualifying cogeneration facilities and qualifying small power production facilities." Id.; see also 18 C.F.R. § 292.303(a) (FERC rule requiring such purchases unless a utility qualifies for an exemption under 18 C.F.R. § 292.309 or § 292.310). The rates for these purchases shall not "exceed[ ] the incremental cost to the electric utility of alternative electric energy." Id. at § 824a–3(b). These rates are commonly referred to as a utility's "avoided cost." Midland Power Co-op. v. FERC, 774 F.3d 1, 3 (D.C. Cir. 2014). FERC regulations provide that electric utilities must submit relevant data to the state regulatory authority so that the "avoided cost" can be determined. 18 C.F.R. § 292.302.

FERC may commence an enforcement action "against any State regulatory authority or nonregulated electric utility" to ensure compliance with PURPA and the rules promulgated thereunder. See 16 U.S.C. § 824a–3(h)(1). PURPA also provides that any electric utility or qualifying facility may petition FERC to enforce these statutory and regulatory requirements. If FERC declines to commence an enforcement action, the petitioner may then "bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements." Id. at § 824a–3(h)(2)(B).

B. Plaintiffs' Dispute with Midland

The Complaint alleges the following facts. The Sweckers own and operate a wind

2

turbine on their Iowa farm. Compl. ¶ 9. The turbine has been a "qualifying facility" under PURPA since 1999. Id. at ¶ 10. Midland Power Cooperative ("Midland") is an electric utility in Greene County, Iowa. Id. at ¶ 12. Pursuant to PURPA, Plaintiffs have been selling excess power from their wind turbine to Midland. Id. Midland buys the rest of its electricity from Central Iowa Power Cooperative ("CIPCO"). Id. at ¶¶ 13–15. Thus, under PURPA's definition of avoided cost, the amount that Midland must pay the Sweckers for electricity depends on the price at which Midland purchases its electricity from CIPCO. Id.

The Sweckers have long disputed Midland and CIPCO's calculation of avoided cost, asserting that Midland is required to purchase electricity from them at a higher price. The Sweckers have repeatedly, and unsuccessfully, petitioned FERC to initiate an enforcement action against both Midland and CIPCO. See, e.g., Swecker v. Midland Power Coop., 149 FERC ¶ 61236 (2014); Swecker v. Midland Power Coop., 147 FERC ¶ 61,114 (2014); Swecker v. Midland Power Coop., 142 FERC ¶ 61,207 (2013); Swecker v. Midland Power Coop., 136 FERC ¶ 61085 (2011). They have also unsuccessfully sued Midland and CIPCO in federal court for violating FERC rules enacted under PURPA. See Swecker v. Midland Power Coop., 2013 WL 11311233 (S.D. Iowa Dec. 30, 2013).

B. Procedural History

The Sweckers commenced this *pro se* action on July 11, 2016 after FERC once again declined to initiate an enforcement action against Midland and CIPCO. Swecker v. Midland Power Coop., 155 FERC ¶ 61,237 (2016). While the Complaint does not state a specific cause of action against any of the Defendants, it alleges that Midland and CIPCO have violated FERC regulations by miscalculating Midland's avoided cost, and further contends that FERC has unlawfully failed to enforce its own regulations against Midland and CIPCO. The Court will

3

construe the Sweckers' claims against Midland and CIPCO as an action under 16 U.S.C. § 824a-3(h)(2)(B) to compel compliance with FERC regulations. The Court will construe the Sweckers' claims against FERC as an action under § 702 of the Administrative Procedure Act, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Midland and CIPCO filed a joint motion to dismiss on September 30, 2016. FERC filed a motion to dismiss on October 14, 2016.

## II.     Midland and CIPCO's Motion to Dismiss

### A. Legal Standard

Midland and CIPCO contend, among other things, that the Court lacks personal jurisdiction over them. See Midland and CIPCO's Mot. to Dismiss ("Midland and CIPCO MTD") 1–2. Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). While the Supreme Court has held that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 914 (2007) (per curiam), the plaintiff nonetheless bears the burden of establishing personal jurisdiction over each defendant. Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 2000).

To satisfy this burden, a plaintiff must allege specific facts that connect the defendant to the forum. Stocks v. Cordish Companies, Inc., 118 F. Supp. 3d 81, 86 (D.D.C. 2015) (quoting Second Amend. Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001)). "Conclusory statements . . . [do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." GTE New Media Servs. Inc. v. BellSouth Corp.,

4

199 F.3d 1343, 1349 (D.C. Cir. 2000) (quoting First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378–79 (D.C. Cir. 1988)). And while the Court must resolve factual discrepancies in favor of the plaintiff, Crane, 894 F.2d at 456, it need not accept the plaintiff's factual allegations as true. Stocks, 118 F. Supp. 2d at 86 (quoting Capital Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74)).

To establish personal jurisdiction over a non-resident defendant, a plaintiff must (1) show that the Court has jurisdiction under the District of Columbia's long-arm statute and then (2) show that a finding of jurisdiction satisfies the constitutional requirements of due process. GTE New Media Servs., 199 F.3d at 1348.[1] The District's long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's— (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13–423(a); see also D.C. Code § 13–423(b) (providing that when personal jurisdiction is founded on the long-arm statute, the asserted claim for relief must "aris[e] from the acts enumerated."). "[T]here are no 'mechanical tests' or 'talismanic formulas' for the determination of personal jurisdiction under § 13–423(a)(1) and (b), and the facts of each case

---

[1] Even though subject-matter jurisdiction in this case is based on a federal question, and not on diversity of citizenship, the District's long-arm statute applies due to the absence of a federal long-arm statute. See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 98 (1987) ("Under Federal Rule of Civil Procedure 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether an out-of-state defendant is amenable to service."); Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991) ("Even though subject-matter jurisdiction is here predicated upon a federal question, [Plaintiffs] must rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies.").

must be weighed against notions of fairness, reasonableness, and substantial justice." Stocks, 118 F. Supp. 3d at 86–87 (quoting Shopper Food Warehouse v. Moreno, 746 A.2d 320, 329 (D.C. 2000) (en banc)). Ultimately, "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum." Mouzavires v. Baxter, 434 A.2d 988, 995 (D.C. 1981).

To show that the exercise of jurisdiction would comply with the constitutional requirements of due process, a plaintiff must demonstrate that there are "minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." GTE New Media Servs., 199 F.3d at 1347 (internal quotation marks omitted) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Under this standard, "courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

B. Discussion

The Sweckers have failed to meet their burden to show that the Court has personal jurisdiction over Midland and CIPCO. The Complaint itself does not allege any facts that would satisfy the District's long-arm statute. In fact, it does not allege any connection between these Defendants and the District whatsoever. In their opposition to Midland and CIPCO's motion to dismiss, the Sweckers respond to Defendants' personal jurisdiction argument by contending only that "Midland and CIPCO are members of a national federation." Pls.' Opp'n to Midland and CIPCO's MTD ("Opp'n") 6. Even if the Court accepts this factual assertion as true, which it is

not required to do in resolving a motion to dismiss for lack of personal jurisdiction, Stocks, 118 F. Supp. 2d at 86, there is no allegation that this unnamed national federation or its members have any ties to the District of Columbia that would subject Midland and CIPCO to personal jurisdiction under the District's long-arm statute. And because the Sweckers have failed to show that jurisdiction is proper under the long-arm statute, the Court need not address whether its exercise of jurisdiction of Midland and CIPCO comports with due process. See GTE New Media Servs., 199 F.3d at 1348. Accordingly, the Court will grant Midland and CIPCO's motion to dismiss for lack of personal jurisdiction.

### III. FERC's Motion to Dismiss

#### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because federal courts are courts of limited subject-matter jurisdiction, "'[i]t is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction." Muhammad v. FDIC, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (alterations in original) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

While the APA generally permits judicial review of agency action, it expressly prohibits judicial review of "agency action [that] is committed to agency discretion by law." Id. at § 701(a)(2). The D.C. Circuit has held that "[t]he ban on judicial review of actions 'committed to agency discretion by law' is jurisdictional. That is, Congress has not given the courts the power to hear challenges to an agency's exercise of the discretion with which Congress has entrusted it." Baltimore Gas and Elec. Co. v. FERC, 252 F.3d 456, 458–59 (D.C. Cir. 2001).

B. Discussion

The Sweckers contend that FERC unlawfully refused to initiate an enforcement action against Midland and CIPCO. The Supreme Court has held, however, that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." Heckler v. Chaney, 470 U.S. 821, 833 (1985). This presumption may be overcome (1) where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers"; (2) where the agency refuses "to institute proceedings based solely on the belief that it lacks jurisdiction"; and (3) where the agency "has conspicuously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." Baltimore Gas, 252 F.3d at 461 (quoting Chaney, 470 U.S. at 833 & n.4). With respect to FERC, specifically, the D.C. Circuit held in Baltimore Gas that an enforcement decision by FERC under a separate statute, the Natural Gas Act, is committed to that agency's discretion and is thus unreviewable. See id. at 458. In that case, the D.C. Circuit reasoned that "FERC's decision how, or whether, to enforce that statute is entirely discretionary. Nowhere does the act place an affirmative obligation on FERC to initiate an enforcement action . . . . 'Certainly the statute does not lay out any circumstances in which the agency is required to undertake or to continue an enforcement action.'" Id. at 460 (quoting New York State Dept. of Law v. FCC, 984 F.2d 1209, 1215 (D.C. Cir. 1993)).

PURPA, too, lacks statutory language that provides guidelines for the agency to follow in determining whether to commence an enforcement action. The statute provides only that a qualifying facility may petition FERC to initiate an enforcement action, and that if FERC declines to do so, the petitioner may then itself bring such an action. See Industrial Cogenerators v. FERC, 47 F.3d 1231, 1232 (D.C. Cir. 1995) (citing 16 U.S.C. § 824a-3(h)(2)(B)). Moreover,

8

the Sweckers have not alleged that FERC has declined to initiate proceedings because it believes it lacks jurisdiction to do so. Nor have they alleged that FERC has adopted a policy that is so extreme as to constitute an abdication of its responsibilities under PURPA. To the contrary, FERC's policy statement on its enforcement responsibilities under PURPA simply notes that "[t]he Commission is not required to undertake an enforcement action [under the statute]." Policy Statement Regarding the Commission's Enforcement Role under Section 210 of PURPA, 23 FERC ¶ 61,304, at *3 (1983). The Court therefore finds that Plaintiffs have failed to overcome the presumption that FERC's decision not to commence an enforcement action is unreviewable. Accordingly, that decision is committed to agency discretion by law, and the Court thus lacks subject-matter jurisdiction to review it.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' motions to dismiss, and will dismiss this action in its entirety. A separate Order accompanies this Memorandum Opinion.

Date: May 17, 2017

*Christopher R. Cooper*

CHRISTOPHER R. COOPER
United States District Judge